# Pickett *v.* Pipkin.

*Bill in Equity by Creditors to set aside Fraudulent Conveyances.*

1.  *Fraudulent conveyances; who may impeach; defenses against creditor's claim.*—The statute of frauds avoids voluntary and fraudulent conveyances, only in favor of creditors and purchasers, who alone may sustain injury from them, leaving them valid and operative as between the parties and their privies ; and when a conveyance is attacked by a person claiming to be a creditor, the parties claiming under it have the right to require proof of his debt, and to set up against it any defense, not merely personal, which the debtor himself might make if sued.

2.  *Conclusiveness of judgment.*—A judgment against the donor or grantor, whether rendered before or after the execution of the conveyance which is impeached, is, in the absence of fraud or collusion, conclusive evidence of a debt existing at the time of its rendition : it establishes the relation of debtor and creditor between the parties to the record, and the amount of·the debt; and the grantee can neither inquire into its merits, nor allege errors or irregularities in it which the debtor himself could only correct in an appellate tribunal.

3.  *Averments of fraud.*—Fraud being a conclusion of law, a general averment that a deed is fraudulent, or that it was executed with the intent to hinder, delay, or defraud creditors, is not sufficient ; but, while the general facts constituting the fraud must be averred, it is not necessary that all the particular facts and circumstances, which are matters of evidence, should be minutely charged.   Where the bill alleged that the debtor, a short time before the commencement of the plaintiffs' suits against him, and for many years prior thereto, owned and possessed a large estate, consisting of real and personal property, "which has been so artfully and fraudulently arranged and conveyed that no title to any portion thereof is now in his name, and he pretends that he has no property subject to levy and sale under execution;" giving a description of each one of the several conveyances, alleging that the consideration of each was assumed or fictitious, and averring that they were made with intent to hinder, delay, and defraud the complainants, and that the debtor and the several grantees fraudulently conspired together to defeat the complainants in the collection of their debts ; *held,* that these averments were sufficient.

4.  *Fraudulent conveyances; grantee's participation in fraud.*—When a conveyance is founded on a valuable consideration, it will not be set aside, at the instance of creditors, on account of the fraud of the grantor, in which the grantee did not participate ; but, when there was in fact no valuable consideration, notwithstanding its recital in the deed, the fraud of the grantor is visited on the grantee, and his own good faith will not protect him.

5.  *Statutes relieving from disabilities of coverture and infancy ; how regarded, in contest with creditors.*—Private statutes, relieving a debtor's son of the disabilities of infancy, and making his wife a free-dealer, when set up in a contest with his creditors, who seek to set aside, as fraudulent, several conveyances executed between him and the members of his family, will be presumed to have been enacted at his instance, or with his consent, no special reason being shown for their passage.

6.  *Proof of fraud.*—Although fraud is not to be presumed, it may be proved, like any other fact, by circumstances ; and while the courts will not force conclusions of fraud from facts which may. consist with honesty and fair dealing, they will not refuse to draw from uncontroverted facts the inferences which logically and naturally flow from them ; and will regard professions of good faith, and denials of fraud, by the parties to the transactions impeached,

[Pickett v. Pipkin.]

"as but their own estimate of their conduct, which cannot relieve them from showing a reasonable and just explanation of the facts."

7. *Same; false recitals in conveyance.*—When a conveyance, or other written instrument, misrepresents the transaction to which it relates, as by untrue recitals, it is, at all times, the object of doubt and suspicion, which increases, or diminishes, as there is evidence proving or negativing any intent or motive to deceive.

8. *Gift by husband to wife.*—When lands are purchased by the husband, and the title taken in the name of the wife, the transaction, if fair, is a gift or advancement to the wife, and there is no presumption of a resulting trust in his favor ; but a court of equity will, at the instance of his creditors, treat it as a direct conveyance from the husband to the wife.

9. *Conveyances held fraudulent.*—Several conveyances, executed by an embarrassed debtor about the same time, by which the whole of his property was conveyed to different members of his family, *held* fraudulent and void at the instance of his creditors, notwithstanding the denials of fraud in the answers, and the recitals of valuable consideration paid ; there being no proof of the ability of the several grantees to pay the purchase-money as recited, nor of the disposition of the money by the debtor, if received.

APPEAL from the Chancery Court of Bullock.

Heard before the Hon. N. S. GRAHAM.

The original bill in this case was filed on the 15th April, 1874, by Mary Pickett and Sarah Pickett, infants who sued by their next friend, against Haywood Pipkin, Eliza A. Pipkin, his wife, Isaac L. Pipkin, his son, M. E. Pruett, his son-in-law, John Cameron, and R. B. Thornton ; and sought to set aside, as fraudulent, several conveyances by which said Haywood Pipkin disposed of his property to the different members of his family, and to subject the property to sale in satisfaction of decrees which the complainants had obtained against him. The complainants' decrees were rendered at the Fall term, 1873, of said Chancery Court, under bills filed by them respectively on the 29th November, 1871, against said Haywood Pipkin, to compel a settlement of his guardianship of their estates. The conveyances sought to be set aside were—1st, a deed by which said Pipkin conveyed to his wife a tract of land containing two hundred acres ; 2d, a deed by which G. B. Turner and wife conveyed to Mrs. Pipkin a tract of land containing about five hundred acres, the purchase-money being paid by said Haywood Pipkin ; 3d, a deed for a store-house and lot in the town of Midway, executed by said Haywood Pipkin to his wife and said M. E. Pruett ; 4th, a conveyance or transfer of a stock of goods and mercantile business, by said Haywood Pipkin to Isaac L. Pipkin and M. E. Pruett ; 5th, transfers of promissory notes and other evidences of debt, not particularly specified, by said Haywood Pipkin to the several members of his family. The bill alleged that each of these conveyances and transactions was made with the intent to hinder, delay, and defraud the complainants in the collection of their demands, and that the consid-

eration expressed in them was assumed or fictitious. Answers were filed by each of the defendants, denying all the charges of fraud, and asserting the validity of the several conveyances; and general demurrers, for want of equity, were incorporated in the several answers. On final hearing, on pleadings and proof, the chancellor held that, even if the evidence established a fraudulent intent on the part of Haywood Pipkin, it did not show that the several grantees participated in the fraud, or had knowledge of it; citing the following cases: *Stover v. Herrington*, 7 Ala. 142; *Borland v. Mayo*, 8 Ala. 104; *Townsend v. Harwell*, 18 Ala. 301; *Pope v. Wilson*, 7 Ala. 690; *Tompkins v. Nicholls*, 53 Ala. 197. He therefore dismissed the bill, and his decree is now assigned as error.

D. CLOPTON, for appellants. (No briefs on file.)

D. M. SEALS, and THOS. H. WATTS, *contra.*

BRICKELL, C. J.—1. The statute of frauds avoids gifts or conveyances, only as to creditors or purchasers, the persons who may sustain injury from them. Between the parties and their privies, they are valid, and have the same operation and effect as if founded on a valuable consideration, fair, *bona fide*, untainted with a covinous intent. Strangers have no right or interest in questioning, and are not permitted to impeach or disturb them. When, therefore, a party, claiming to be a creditor, avers a gift or conveyance to be in fraud of his rights, and void under the statute, the primary fact is the existence of a debt, to which the property given or conveyed would be subject, if the gift or conveyance did not stand in the way, obstructing legal remedies to reach it. This fact is open to controversy, and parties claiming under the gift or conveyance have not only the right to require that it shall be proved, but have the right to prefer, against the claim or demand pleaded, any defenses, not merely personal, which the debtor could make in an independent suit upon it.

2. A judgment against the donor or grantor, whether rendered prior or subsequent to the gift or conveyance, is competent evidence of the debt—of the fact that the party, in whose favor it was rendered, stands in a relation to be affected and injured by the gift or conveyance. When rendered in the regular course of judicial proceedings, by a court of competent jurisdiction, in the absence of fraud or collusion, it is conclusive evidence of a debt existing at the time of its rendition. *Snodgrass v. Br. Bank Decatur*, 25 Ala. 161; *Dubose v. Young*, 14 Ala. 137. It establishes the relation of debtor and creditor

between the parties to the record, and the amount of the indebtedness. There may have been error, or irregularity, in its rendition, or laches in making defense against it; or the court may have mistaken the law, and the rights of the parties to it. The controversy it silences, cannot be reopened and retried collaterally. The donee or grantee cannot inquire into its merits, or allege error, which the debtor could have corrected only by an appeal or writ of error to a superior tribunal.—*Candee v. Lord*, 2 Coms. (N. Y.) 269; *Swihart v. Spaner*, 24 Ohio St. 432; *Sidensparker v. Sidensparker*, 52 Me. 481; *Jenness v. Berry*, 17 N. H. 549; *Wingate v. Haywood*, 40 N. H. 437; Bump on Fraud. Conv. 557-8.

The decrees in favor of the complainants were rendered by a court of competent jurisdiction, in the regular course of proceedings, the defendant having full opportunity of contestation. Their validity is undisputed by the defendants— no fraud, collusion, or want of good faith in obtaining them, is imputed. Whether the court was in error in rendering them, or whether a defense could have been made which would have prevented their rendition, are not open inquiries, and should not have been considered in the court below in the course of this suit.

3. Fraud is a conclusion of law; and a mere general averment that a deed is fraudulent, or that it was made with the intent to hinder, delay, or defraud creditors, is insufficient. There must be an averment of the facts which constitute the fraud, or which tend to support the conclusion.—*Flewellen v. Crane*, 58 Ala. 627; *Gilbert v. Lewis*, 1 DeGex, J. & Sm. 49. In *Flewellen v. Crane, supra*, the averments were, that a conveyance, purporting on its face to be made in payment of a debt due from the grantor to the grantee, was "fraudulent and void as against pre-existing creditors," and that it was "made with the intent to hinder, delay, or defraud said creditors." There was no averment impeaching the adequacy or *bona fides* of the consideration expressed; no averment that the debt was not justly due from the grantor to the grantee; no averment of a secret trust for the grantor. The averment was held insufficient to support a decree final, rendered on a decree *pro confesso*, which declared the conveyance void for fraud. General certainty is sufficient in pleadings in equity; and though a mere general charge of fraud is insufficient, it is not to be understood that the particular facts and circumstances which confirm or establish it should be minutely charged.—Story's Eq. Pl. § 252. These are matters of evidence, and it is not necessary, or proper, that pleadings, at law or in equity, should be incumbered with all the matters of evidence it may be intended to introduce. A general aver-

ment of facts—not of conclusions of law—upon which the rights of the parties depend, is sufficient.

The bill before us may not be drawn with the certainty and precision which is desirable, and which the facts developed by the evidence rendered practicable. Still, we think, construing it fairly, without indulging intendments or presumptions in favor of the pleader, that it must be regarded as averring, not only an actual intent to defraud the complainants, as creditors of the grantor, but the general facts which constitute the fraud. It is first alleged that, a short time before the commencement of the suits, in which the complainants obtained the decrees it is the purpose to enforce, and for many years previously, the grantor owned and was possessed of a large property, real and personal, " *which has been so artfully and fraudulently arranged and conveyed, that no title to any portion thereof is now in the name of the said Haywood Pipkin, and he pretends that he has no property subject to levy and sale under execution.*" This is followed by an averment of the conveyances and transfer which are impeached, as to each of which there is an averment that the consideration was *assumed, or fictitious ;* and a general averment that each was made with the *intent to hinder, delay, or defraud* the complainants. There is a succeeding averment of a fraudulent combination between the grantor and the grantees, to defeat the complainants in the collection of any decrees they might thereafter obtain. These averments plainly inform the defendants of the facts upon which the complainants rest their right to relief, and put in issue the validity of the conveyances impeached.

4. Conveyances cannot be avoided, when made upon a valuable consideration, because of the fraud of the grantor, in which the grantee does not participate.—2 Brick. Dig. 18, § 71. But, though a conveyance may recite a valuable consideration, if the recital is not true in fact—if there is a want of satisfactory evidence to establish it—there can be no inquiry into the good faith of the grantee. The fraud of the grantor must be visited on him—he is not clothed with any right or equity which will protect him against the right and equity of the creditors intended to be defrauded.—*Clark v. Chamberlain*, 13 Allen, 257; *Wood v. Hunt*, 38 Barb. 302; *Huggins v. Perrine*, 30 Ala. 396; *Cole v. Varner*, 31 Ala. 244.

5-6. We may with propriety remark, before proceeding to examine separately the facts in reference to each of the conveyances which are assailed, that the case presents very remarkable characteristics. The inferences from them are all unfavorable to the grantor and grantees, and they must excite the vigilance and jealousy of any tribunal compelled to pass

[Pickett v. Pipkin.]

upon the fairness of the transactions. In 1854, the grantor became the guardian of the complainants, and so remained until 1865, when he made in the Court of Probate a final settlement, or that which purports to be a final settlement of his guardianship. As a judicial proceeding, this settlement was a mere nullity, which could not be interposed as a bar to any suit the complainants might commence, for an account and settlement of the guardianship. The decrees rendered against him in 1873, in the suits commenced in November, 1871, show that he was largely indebted to the wards. It is plain that he was apprehensive of these suits, and that the results of them were not unexpected to him. By a special act of the General Assembly, approved February 18, 1870, the wife of the grantor, the present defendant Eliza A., is converted into a free-dealer, a *feme sole*, so far as capacity to contract, to hold and convey property, and to sue and be sued, is concerned. On the 15th February, 1871, his son, the defendant Isaac L., is, by a special act of the General Assembly, relieved of the disabilities of infancy. The consent, if not the solicitation of the grantor, to the enactment of these statutes, must be presumed. It is not pretended that they were enacted without his agency or knowledge, and no reason is offered for the change in the condition and relation of the wife, and of the son. In a short period, the father and husband strips himself of all visible and tangible property, and the wife, son, and sons-in-law become the owners ostensibly. The grantor receives, according to the conveyances, and his own evidence, and that of the grantees, about six thousand dollars, which entirely disappears—no investment is made of it, and it is not said, though their evidence is consistent with no other hypothesis, that he retains it, a barren and unproductive fund his creditors cannot reach. Fraud is not presumed, but, like every other fact, it may be proved by circumstances; and courts, while not indulging presumptions that it is imputable, cannot refuse to draw from uncontroverted facts the inferences flowing from them logically, and naturally. The parties to these transactions profess their good faith, and vigorously disclaim all purpose to defraud. These professions are but their own estimate of their conduct and transactions, and cannot relieve them from affording a reasonable and just explanation of facts which are inconsistent with their opinions.

7. The declaration of trust, executed on the 20th of January, 1871, in favor of Mrs. Pipkin, is shown to be untrue in all its recitals of consideration. This does not happen from inadvertence, or mistake, or carelessness. All the facts were known to the husband, and, according to his evidence, were

known to the wife, who frequently made inquiries as to the investment or disposition he had made of her moneys ; and he kept them separate from his own means. An instrument, misrepresenting the transaction to which it relates, is, at all times, the object of doubt and suspicion, which diminishes, or increases, as there is evidence negativing an intent or any motive to deceive, or evidence that there was deliberate, intentional deceit.

8-9. In March, 1871, without consideration, the lands which the husband had purchased of Turner, at his request, are conveyed to the wife. This, at best, if fair, would be but an advancement to the wife, repelling the presumption of a resulting trust in favor of the husband. In derogation of the rights of the creditors of the husband, at their instance, a court of equity deals with the transaction as if the conveyance was immediate from the husband.—1 Am. Lead. Cases, 50 ; *Huggins v. Perrine*, 30 Ala. 396 ; *Elliott v. Horn*, 10 Ala. 384 ; *Patterson v. Campbell*, 9 Ala. 933. In December, 1871, these lands are conveyed, by deed of bargain and sale, to Cameron, the brother of the wife, and the son-in-law of the husband. In January, 1872, by deed of bargain and sale, Cameron conveys a part of the lands to his brother-in-law, the son-in-law of Pipkin. If the sale and conveyance to Cameron was real, upon an actual valuable consideration, as it imports, it is apparent that clearer and more convincing evidence of his ability to purchase would have been given. There would, also, have been some satisfactory evidence of the disposition made by husband or wife, of the large sum of money which it is said he paid. There is a want of evidence on this point. So, there is a want of satisfactory evidence, explaining the immediate sale and conveyance to Thornton. The fact remains, that the lands pass to the sons-in-law of an embarrassed debtor, apprehensive of suits, and his creditors are hindered and delayed. There are too many badges of fraud surrounding these transactions, for a court to sanction them, without clear evidence of the ability of Cameron to purchase, of the payment of the purchase-money, of his ignorance of the fraudulent purposes of the husband in the original conveyance to the wife, and of his various contrivances by which his visible property was partitioned among his wife and children.—*Hubbard v. Allen*, 59 Ala. 283 ; *Harrell v. Mitchell*, 61 Ala. 270.

The sale of the merchandise and choses in action stands affected by all the facts and circumstances which are unfavorable to the conveyances we have been considering. It is so near in point of time to those conveyances, and to the commencement of the suits against the vendor, that, in the light

[Uhlfelder & Co. v. Carter's Adm'r.]

of the evidence, it can but be regarded as one of the instru-
mentalities the parties were employing to place all available
property beyond the reach of any decree which might be
obtained in those suits.

The chancellor erred, in not granting the relief prayed by
the complainants ; and the decree must be reversed, and the
cause remanded, for further procceedings in conformity to
this opinion.

STONE, J., not sitting.